## The State v. Shelton.

1. **Criminal Procedure:** CHALLENGE TO GRAND JUROR: NO BIAS SHOWN. Where the only ground of a challenge to a grand juror in a murder case was his own statement that he had read some portion of the evidence taken at the coroner's inquest; that he thought he had formed an opinion from what he had read as to the guilt of the defendant, but that he had no such impression or bias as would prevent him from listening to the evidence and passing on the question as impartially as though he had never heard of the case, *held* that the challenge was properly overruled.

2. ———: FILLING PANEL OF GRAND JURORS: INDICTMENT BY AGREEMENT OF TWELVE VALID. Where the grand jury was composed of fifteen jurors, appointed, summoned and impaneled as directed by the statute, but challenges were sustained to three of them, who were directed to take no part in the investigation of the case, *held* that it was not reversible error, if error at all, for the court to refuse to have the panel filled, since the remaining twelve agreed upon an indictment against defendant, and he could not have been prejudiced by the refusal of the court to fill the panel.

3. **Criminal Law:** MURDER IN FIRST DEGREE: SUFFICIENCY OF INDICTMENT. To constitute the crime of murder in the first degree, it is necessary that *the killing* be done with malice aforethought; that it be done willfully; also that it be done deliberately and premeditatedly; and the indictment in this case (see opinion) very clearly charges each of these elements of the crime, and is sufficient.

4. ———: MURDER: NON-EXPERT TESTIMONY AS TO DEFENDANT'S MENTAL CONDITION. An ordinary witness is competent to tesify whether or not the defendant on trial for murder manifested any anger upon a certain occasion, in his presence, towards the deceased.

5. ———: ———: EVIDENCE OF ACTS TENDING TO IRRITATE, BUT UNKNOWN TO DEFENDANT: ERROR WITHOUT PREJUDICE. Evidence of acts on the part of decedent, calculated to irritate defendant, offered for the purpose of showing a motive for hostility on his part toward the deceased, should not have been admitted on a trial for murder, where it appeared that such acts were unknown to him; but where there was evidence of other like acts, which were known to him, the error was without prejudice.

6. ———: ———: SELF DEFENSE: WHEN KILLING JUSTIFIED: RULE STATED. A party who is assaulted by another may form his judgment of the dangers of his situation from the circumstances, as they reasonably appear to be, and may act on the appearances of danger thus presented; but, to justify the taking of human life in self-defense, there

64  333
83  188
64  333
89  187
89  412
90  658
64  333
94  704
64  333
97  389
98  130
100    6
64  333
103   10
64  333
104   12
105  281
64  333
108   23
64  333
114  496
64  333
116  236
64  333
118  606
64  333
f121 635

must be such an appearance of impending danger as that the killing of the assailant reasonably seems to be the only means of preventing the threatened injury.

7. ———: ———: ———: REASONABLE APPREHENSION OF DANGER SUF-
FICIENT. A reasonable apprehension of impending danger will justify the use of extreme force in self-defense. It is not necessary that the danger be in fact imminent, if, from the circumstances, the defendant is reasonably justified in thinking that it is, and that the necessity to exercise extreme force in repelling it is immediate and urgent.

8. ———: MURDER IN SECOND DEGREE: ERRONEOUS DEFINITION OF:
ERROR WITHOUT PREJUDICE. An instruction given in this case erro-neously defined murder in the second degree, but the error was in part cured by other instructions, and wherein it was not cured it was not to defendant's prejudice, and, therefore, is no ground for reversal.

*Appeal from Marshall District Court.*

THURSDAY, SEPTEMBER 18.

THE defendant was accused of the crime of murder, com-mitted, as charged in the indictment, in the killing of one William Swanson. He was convicted of murder of the second degree, and was sentenced to a term of imprisonment in the penitentiary, and from this judgment he appeals.

*J. H. Bradley, Binford & Snelling* and *Sutton & Childs,* for appellant.

*Smith McPherson, Attorney-general,* for the State.

REED, J.—I. Defendant challenged four members of the grand jury. The challenge was sustained as to three of the jurors, and overruled as to the fourth. He then requested the court to order the panel to be filled by the selection of three additional jurors, but this request was overruled. The action of the court in overruling said challenge and refusing to order the panel to be filled, as requested, is complained of. The ground of the challenge was, that the grand juror had formed such an opinion as to the guilt of the defendant as would prevent

1. CRIMINAL procedure: challenge to grand juror: no bias shown.

him from rendering a true verdict on the evidence. The juror was examined as to his qualifications, and answered that he had read some portion of the evidence taken at the time of the coroner's inquest, but did not know that he had read the whole of it; that he thought he had formed an opinion from what he had read as to the guilt of defendant, but that he had no such impression or bias as would prevent him from listening to the evidence and passing on the question as impartially as though he had never heard of the case. No evidence except this statement of the juror was offered in support of the challenge. We think it was properly overruled. The statement of the juror did not show that he was prejudiced or disqualified by reason of his opinion.

It was held by this court, in *The State v. Garhart*, 35 Iowa, 315, that when, by reason of the sustaining of chal-

2. ———: fill- lenges to individual jurors, the panel was left
ing panel of
grand jurors : with a less number than fifteen jurors qualified
indictment
by agreement to act in the cases in which the challenges had
of twelve
sufficient. been allowed, it was competent for the district court to order that the panel be filled by the addition of the requisite number of jurors, who should act only in those cases. It was also held that when by such means the panel was reduced to a number less than twelve, it was the duty of the court to make such order. Under this ruling, it would have been proper for the court to make the order as requested by defendant. But we are of opinion that he was in no manner prejudiced by the refusal of the court to make such order. The jury, as constituted, was a legal grand jury. It was composed of fifteen jurors, who had been appointed, summoned and impaneled in the manner directed by the statute. Three of the number, it is true, were prohibited from acting in the investigation of the charge against defendant, but the organization of the body was not affected by that circumstance. It required the concurrence of twelve grand jurors to find an indictment against him on that charge. There were twelve of the number who were competent to act

in the case, and these twelve concurred in finding the indict-
ment. The result to the defendant could not have been
changed by the addition of three other jurors to the panel,
even though each one of those so added had opposed the
finding of the indictment.

II. The indictment is in the following words: "The
grand jury  *  *  *  *  *  *  * accuse Eugene
Shelton of the crime of murder in the first degree,

3. CRIMINAL
law: murder
in first de-
gree: suf-
ficiency of
indictment.

committed as follows: The said Eugene Shelton, on
the twenty-seventh day of November, A. D. 1883,
in the county aforesaid, and upon the body of one
William Swanson, then and there being, willfully, feloniously,
deliberately, premeditatedly, and of his malice aforethought,
did commit an assault with a deadly weapon, being a revolver,
then and there held in the hands of the said Eugene Shelton, and
loaded and charged with powder and bullets, and then and there
the said Eugene Shelton did, with the specific intent to kill and
murder the said William Swanson, willfully, feloniously delib-
erately, premeditatedly, and of his malice aforethought, shoot
off and discharge the contents of said deadly weapon at,
against, into and through the chest and body of the said
William Swanson, thereby willfully, feloniously, deliberately,
premeditatedly, and of his malice aforethought, inflicting in
and upon the chest and body of the said William Swanson a
mortal wound, of which wound the said William Swanson
did languish, and, languishing, did live until the twenty-ninth
day of November, A. D. 1883, and on the said twenty-ninth
day of November, A. D. 1883, in the county aforesaid, the
said William Swanson of said mortal wound did die    *
*    *    *    *    *    *    *    *    * "

The district court held that the indictment charged the
defendant with the crime of murder of the first degree, and
put him on trial for that offense. This ruling is assigned as
error. The position of counsel for defendant is, that a delib-
erate and premeditated intent to kill is an element of the
crime of murder of the first degree, and that the indictment,

while it charges that the act which caused the death of Swanson was done with the specific intent to kill him, and was done deliberately and premeditatedly, does not charge that the intent to kill was deliberately formed and premeditated.

The crime of murder of the first degree is defined by Code, § 3849, as follows: "All murder which is perpetrated by means of poison, or lying in wait, or any other kind of willful, deliberate and premeditated killing, * * * , * * * * is murder in the first degree" * * By section 3848, murder is defined as the killing of a human being with malice aforethought, either expressed or implied. To constitute the crime of murder of the first degree, then, it is essential that *the killing* be done with malice aforethought; that it be done willfully; and also that it be done deliberately and premeditatedly. The indictment before us charges very clearly that each of these elements of the crime was present in the killing of William Swanson. It is averred that defendant did the act, and inflicted the wounds which caused his death, with the specific intent to kill him. It is also averred that said wound was inflicted deliberately and premeditatedly. If the wound was inflicted with intent to kill, and death resulted from it—the killing—was willful; and if it was inflicted deliberately and premeditatedly with that intent, the killing was also deliberate and premeditated. And it has never been held that it was necessary to allege more than this in the indictment. See *State v. McCormick*, 27 Iowa, 402; *State v. Watkins*, Id., 419; *State v. Stanley*, 33 Id., 526.

III. The shooting occurred at the room in which defendant lodged. The evidence showed that defendant had occupied this room for some time before the shooting, with a woman called May Lee, and that Swanson was in the habit of visiting the room on occasions when defendant was absent from it. A witness who testified to having accompanied Swanson to the room on one occasion, and that defendant came into the room

4. ——: non-expert testimony as to defendant's mental condition.

while they were there, was asked whether defendant mani-
fested any anger while he was there. The question was
objected to by defendant's counsel, on the ground that it called
merely for the opinion or conclusion of the witness. The
objection was overruled, and the witness answered that
defendant looked angry; that he spoke to them when he first
came into the room, but afterwards had nothing to say to
them.

One of the rules laid down by Mr. Lawson, in his valuable
work on expert and opinion evidence, is, that "the physical
or mental condition or appearance of a person, or his manner,
habit or conduct, may be proven by the opinion of an ordi-
nary witness, founded on observation." Rule 64, p. 466.
And this rule is well settled by the authorities. Under it, it was
competent for the witness to state what, in his opinon, the
mental condition of the defendant was on the occasion
in question, as indicated by his conduct and appearance.

The same witness was asked what were the relations of
Swanson and the woman, May Lee. This question was
objected to by defendant's counsel as irrelevant
and immaterial. The objection was overruled,
and the witness testified to certain acts of famil-
iarity between the parties, but stated that defend-
ant was not present when these familiarities took
place. This evidence was introduced for the purpose of
showing an occasion for hostility on the part of defendant
towards Swanson. But, as he had no knowledge of these
particular acts of intimacy, we think it very apparent that
the evidence with reference to them was improperly admitted.

It was shown that he knew of the visits of Swanson to the
woman, and that he was annoyed and irritated thereby. As
the same fact was proved which it was sought to establish
by the objectionable testimony, we cannot say that defendant
was prejudiced by its admission.

IV. The killing of Swanson is not denied by defendant,
but his claim is that he acted in self-defense. The evidence

The State v. Shelton.

6. ——: ——: shows that Swanson and one Chapman went to
self-defense: the door of defendant's room, and that Swanson
when killing
justified: rule
stated.    sought to gain admittance to the room. He was
intoxicated at the time, and, being denied admittance, became
noisy and abusive. He threatened to break open the door if
it was not opened for him. He also said that he would
"shoot it full of holes," and declared that if he got into the
room he would knock or shoot the head off of defendant. He
and defendant had quarreled during the day, and in the quar-
rel he assaulted defendant and attempted to strike him, but
was prevented from doing so by a person who was present at
the time. He was armed with brass knuckles at the time of
this quarrel, and had these knuckles on his hand when he
was at defendant's door, but was not otherwise armed. He
was heard a number of times, during the afternoon after the
quarrel, to use threatening language towards defendant. Chap-
man endeavored to induce him to go away from the door, but
he refused to go. Another acquaintance of his came to the
place and advised him to go away. When he threatened to
break the door, defendant, who was inside of the room, spoke
to him and told him that if he broke the door open he would
shoot him. Chapman and the other person who was with
Swanson, at this, told defendant not to shoot—that they
would take him away. They took hold of him for the pur-
pose of removing him, but he tore away from them and went
back to the door. At about this time the door was opened,
but whether by Swanson or defendant does not appear.
Defendant stood a short distance from the door with the
pistol in his hand. Swanson advanced towards him, and
when he was on the threshold defendant fired at him. A
second shot was fired a moment later. One of the shots
struck Swanson, but which one it was is not clearly shown.
Defendant procured the revolver with which the shooting
was done, after the first quarrel. At the time of the quarrel
in the afternoon he had a revolver, which he borrowed in
anticipation of having trouble with Swanson and Chapman;

and, when he returned it to the owner after the quarrel, he stated that if it had not been for Chapman he would have shot Swanson during the quarrel.

Defendant asked the court to give the following instruction: " In determining whether the defendant was justified in shooting the deceased, you are instructed that he may have been justified in shooting him, although he was in no actual danger at the time the shooting was done. If from what he had heard in regard to the deceased, and if from what he had seen of him during the day, or at other times, and from the threats he made against the defendant within his hearing, the defendant had reason to apprehend and believe that he was in danger of great bodily injury or of his life, then he was justified in defending himself, even to the extent of taking the life of the deceased"—which the court refused.

The evident purpose was to embody in this instruction the well settled rule, that a party who is assaulted by another may form his judgment of the dangers of his situation from the circumstances as they reasonably appear to be, and may act on the appearance of danger as thus presented. But we think the instruction fails to present the whole of the rule on the subject, and that the court properly refused to give it. To justify the taking of human life on this ground, there must be such an appearance of impending danger as that the killing of the assailant reasonably seems to be the only means of preventing the threatened injury, and this element of apparent necessity is omitted from the instruction. Under it, defendant would be justified in killing his assailant, if from the circumstances " he had reason to believe that he was in danger of great bodily injury or of his life," regardless of whether the danger might have been otherwise avoided or not.

But defendant complains that the true rule on the question was not given by the court in its instructions. The jury were told, however, in the eleventh instruction that, "if defendant honestly believed, and had reason to believe, at the

time of the shooting, that he was in great peril, and great bodily harm was about to be inflicted on him by Swanson, and that such injury would actually be done unless immediately prevented by the most extreme measures, and, acting under such well grounded apprehension, he fired the fatal shot, the law would excuse him." This instruction states the rule as fairly as defendant was entitled to have it stated.

V. The jury were instructed in the ninth instruction that, "to justify the taking of life, or inflicting great or dangerous bodily harm upon an assailant, it must appear that the danger is imminent, and the necessity to exercise extreme force or use dangerous or deadly weapons urgent. If the danger be not great and imminent, and the necessity urgent to use extreme force in repelling an assault, the law regards the person using such extreme force as the aggressor."

7. ——: ——: ——: reasonable apprehension of danger sufficient.

The last clause of this instruction is erroneous. It is also in conflict with the portion of the eleventh instruction quoted above.

In this instruction the rule is stated to be that one using extreme force in repelling an assault is regarded as an aggressor, if the danger be not great and imminent, and the necessity urgent, while in the former the jury are told that defendant would be justified in shooting Swanson if he believed, and had reason to believe, that he was in great danger, and that there was urgent necessity to shoot him as the only means of preventing the injury. In the one, the right to use great force in resistance of the assault is made to depend on the fact of the danger, while in the other it is made to depend on his belief of the existence of the danger. The instructions seem to us to be irreconcilable.

VI. In an instruction in which the different offenses included in the indictment are defined, the following is given as the definition of murder of the second degree: "Murder in the second degree is the unlawful killing of a human being intention-

8. ——: murder in second degree: erroneous definition of: error without prejudice.

ally, or by using a dangerous or deadly weapon or implement in such a way as would naturally or necessarily produce death, when the intention to kill was formed before the assault, in the heat of passion, or under provocation or excitement not sufficient to justify or excuse the assault, but without sufficient time between the conception of the design or purpose to kill and the assault to allow the blood to cool, or give opportunity to deliberate, premeditate, and reflect on the crime and its consequences."

Counsel for defendant contend that this is a definition of manslaughter, rather than of murder of the second degree; and if this definition was to be considered just as quoted, and without any reference to the balance of the instruction, this claim would have to be conceded. But in another part of the instruction the jury are told that malice aforethought is an element of murder, and they would understand that this element must be present in the killing, to constitute murder of the second degree. The definition seems to be on the theory that, to constitute the crime, the killing must be willful. In this respect it is erroneous, but the error is not to the prejudice of defendant.

Other questions are presented which relate to the conduct of the trial. Without discussing them, we deem it sufficient to say that defendant was in no manner prejudiced by the matters complained of. For the error in the ninth instruction the judgment must be

REVERSED.