## STATE OF IOWA v. GUY HELM, Appellant.

**Evidence:** MOTION. On a murder trial, where it appeared that deceased
1  and his friends formed one faction in a neighborhood feud, and that defendant and his friends formed the other, evidence that prior to the homicide there were frequent quarrels and fights between the factions, was admissible, where it also appeared that defendant was an adviser or participant.

**HARMLESS ERROR.** It is error to permit the state to show that defendant had a bad reputation before he attempts to show that his reputation is good. But such error is, under the facts at bar, cured by
2
3  a special charge withdrawing it and directing the jury "to with-
5  hold, applying the evidence in any way as far as possible," supplemented in the general charge by a direction "to disregard it as having no weight whatever."

**SAME.** These two charges construed together, are neither contradict-
4  ory nor misleading.

**CROSS-EXAMINATION.** Defendant in a prosecution for murder, who
6  has testified to the effect that the homicide was committed in self-defense, may be asked on cross-examination if he did not state at a certain time, before the homicide, that some of the boys, (referring to the family of which defendant was a member), would die with their boots on, some day.

**RELEVANCY.** Where a homicide occurred in October, evidence of
7  threats made by defendant concerning deceased, in July, preceding, are admissible to impeach defendant, the homicide being the result of a feud, which existed during the interval.

**Practice.** Where testimony in a criminal case is properly admissible
8  for impeachment alone, and where it appears by the record that the jury must have understood that it was impeaching, only, the failure of the court to charge specifically, that the effect of such

testimony should be limited to impeachment, will not constitute reversible error.

**Practice Supreme Court: AFFIDAVITS.** Misconduct in counsel's argument is not available on appeal unless preserved by bill of exceptions. Affidavits are insufficient.

*Appeal from Keokuk District Court.*—HON. A. R. DEWEY, Judge.

TUESDAY, APRIL 7, 1896.

THE defendant was indicted for the murder of Walter Clark. There was a trial, which resulted in a verdict of guilty of murder in the second degree, and a judgment of imprisonment in the penitentiary for eighteen years. Defendant appeals. *-Affirmed.*

*C. H. Mackey, Woodin & Son,* and *Hamilton & Donahue* for appellant.

*Milton Remley,* attorney general, and *F. L. Goeldner* for the state.

ROTHROCK, C. J.—I. This is the second appeal by the defendant in this case. See 92 Iowa, 540 (61 N. W. Rep. 246). It is not denied that the defendant killed Walter Clark by shooting him with a revolver. And it is not claimed that the shooting was accidental. In the trial from which this appeal was taken, as well as upon the former trial, the contention was that the killing was done in self-defense. The judgment was reversed upon the former appeal, upon questions which are not now involved in the case. The tragedy occurred in the night-time, on a public road in Keokuk county, near the residence of one Oliver Helm. The deceased and his brother, Byron Clark, and the defendant are cousins, and for many years resided on farms in the same neighborhood. The defendant was about thirty-three years of

age at the time he took the life of Walter Clark. He had been married for some years, and was the father of four children. Byron Clark was then about twenty-three years old, and Walter Clark was younger, and both were unmarried. It appears that these persons were not on friendly terms. For some time before the fatal occurrence, there had been quarreling, and some fighting, in the neighborhood; and it is to be inferred from the testimony of many of the witnessess that the community was largely made up of families who were related to each other, as uncles, aunts, cousins, and other family connections. There was what is called "bad blood" among them. In the examination of the witnesses in chief, the prosecution was permitted to introduce evidence, over the defendant's objection, relating to quarrels, fights, and difficulties before the homicide, between what appeared to be two contending factions, in the neighborhood. It is urged that it was not competent to prove the details of these fights and disturbances by direct testimony. We do not think there was error in overruling objections to this line of evidence. The defendant appears to have been present on the occasions referred to, and took part, either as an adviser, or as an active participant. It is always admissible, in a trial for murder, to show previous ill feeling on the part of the defendant toward the deceased. The authorities cited by counsel for defendant, on this proposition, do not involve the question under consideration. They relate mainly to the cross-examinination of witnesses to good character, and they merely reiterate the well-known doctrine, that, in cross-examination, particular acts indicative of bad character, should be excluded.

II. The defendant did not introduce any evidence for the purpose of showing that his previous reputation as an orderly and peaceable man was good before

the homicide. The state introduced a number of witnesses in rebuttal, who testified that his reputation was bad. And a number of witnesses were introduced by the state who testified that the reputation of the deceased as a peaceable citizen was good. All this evidence was introduced over the defendant's objection, and the ruling of the court in permitting its introduction is claimed to be erroneous. If this were all that pertains to this question, the judgment of the court should be promptly reversed. The overruling of the objection to the evidence was a palpable violation of one of the fundamental rules of evidence, which is now everywhere recognized and enforced, and to which there are no exceptions in trials for criminal homicide. 3 Greenl. Ev., sections 25-27. At the close of the introduction of this evidence, counsel for the defendant moved to exclude it, and the motion was overruled. But immediately after the introduction of all the evidence in the case, the following order was made: "Gentlemen of the jury: Referring to the evidence offered by the state, tending to prove the reputation of the deceased for good order, and of the defendant for being disorderly, the same is withdrawn from your consideration, and you will withhold applying the evidence in any way, as far as possible; and the motion of the defendant to strike same out is sustained." And in the general charge to the jury, the following instruction was given: "Any and all evidence introduced by the state, tending to prove that the reputation of Walter Clark for good order and peaceableness, prior to the homicide, was good, and also all evidence tending to prove that the reputation of the defendant for peaceableness and good order, was bad before the homicide, is withdrawn, and you will disregard it, as having no weight whatever." It is strenuously contended in behalf of the defendant, that the

withdrawal of the objectionable evidence from the consideration of the jury did not cure the error in admitting it. It is said that the direction, or order, made at the close of the evidence (being an instruction to the jury), and the instruction given in the general charge, are in conflict, as being inconsistent with each other, and that, as it cannot be determined which instruction the jury followed, the judgment should be reversed; and we are cited to the cases of *State v. Shelton*, 64 Iowa, 333 (20 N. W. Rep. 459), and *State v. Keasling*, 74 Iowa, 528 (38 N. W. Rep. 397). These cases announce the rule contended for by counsel. But we think there is no conflict, or inconsistency, between the two instructions under consideration. The last is in exactly the same line with the first, and is couched in more emphatic language. When both are considered together, they constitute an absolute direction that the evidence erroneously admitted, must be entirely disregarded, and excluded from any consideration by the jury.

III. It is further urged that the instructions did not cure the error, because it was impossible for the jury to disregard the testimony of the witnesses. We admit that there is force in this objection. But the general rule is that, where evidence has been erroneously admitted, it may be withdrawn from the jury, and thus cure the error. It is said, however, that the case presents an exception to the rule, because the error was so serious that it could not be recalled by instructions, and we are cited to the cases of *Martin v. Orndorff*, 22 Iowa, 505; *Wicks v. Town of DeWitt*, 54 Iowa, 131 (6 N. W. Rep. 176); *Hall v. Railway Co.*, 84 Iowa, 311 (51 N. W. Rep. 150), and *Stevens v. Ellsworth*, 94 Iowa, 758 (63 N. W. Rep. 683.) It is true, that in *Martin's Case* there was a reversal, because the plaintiff's counsel, in his argument to the jury, read the evidence taken on a former trial, and

which was not introduced in evidence on the second trial. Counsel for the defendant objected, and the court permitted the reading as a part of the counsel's argument. The court afterwards instructed the jury not to consider anything read from the minutes of the evidence at the former trial. Reference is made in the opinion to some peculiar circumstances in the case. It is not stated whether the reversal was upon the ground that the error could not be cured by proper instructions. The real ground for a reversal in that case was the misconduct of counsel. If one of the counsel for the state in this case had persisted in reading the evidence on the former trial, "as part of his argument in the case," it might be good ground for reversal. In *Wicks v. Town of DeWitt*, the court not only refused to strike out the objectionable evidence, but did not, unless by the merest inference, instruct the jury not to consider it. The other cases do not appear to us to demand further notice. They are clearly distinguishable from the question under consideration. We conclude that it ought not to be held, in view of all the circumstances attending this trial, that there was prejudice to the defendant in the matter of this objectionable evidence. It is to be remembered, that it is the general rule, that evidence improperly admitted, may be withdrawn from the jury, and the error thus cured. This court has many times so held. We need not cite the cases. In the trial of jury cases the court is required to pass upon the admissibility of evidence, without time for much deliberation, and when an error occurs, and, soon after, a correction is made, the proper administration of justice does not require, unless it may be in extreme cases, that the court should grant a new trial because of the error. Knowledge of facts, tending to show that a party charged with crime is guilty, does not necessarily disqualify a person from being chosen

as a juror in the case. The question in accepting him as a juror is, can he render a proper verdict upon the evidence submitted to him upon the trial? So, if, by errors of the court, improper evidence is admitted and ruled out, the general rule is that the juror is not disqualified, by reason of the error, from returning a true verdict, or, in other words, that the error is stricken from the record, and no longer remains in the case.

IV. The defendant was a witness in his own behalf. He testified fully with reference to the whole transaction. And the facts related by him show that he was attacked and wounded by Walter and Byron Clark, with pocket knives, and that he discharged his revolver at them to defend himself from great bodily injury. He also testified fully to the previous altercations, quarrels, and fighting, testified to by the witnesses in behalf of the prosecution. And he denied making threats, as testified to by one of the state's witnesses. He stated that seven or eight of the young men in the neighborhood had been making threats against him; had drawn revolvers and shotguns on him. In short, the whole of his testimony was a vindication of himself, as an innocent and persecuted man. He was cross-examined by counsel for the state; and afterwards, but before the close of the introduction of the evidence in chief for the defense, the state recalled the defendant for further cross-examination, and propounded to him this question: "Q. Do you remember a talk in Helm's field with George and Lawrence McMickle, in July, in hay harvest, and did you say to them that some of the Clark boys would die with their boots on some of these days?" (Objected to as not cross-examination. Overruled, and defendant excepts.) The answer to the question was, "I did not have any such talk." It is urged that the ruling of the court was erroneous, because the question was not proper

cross-examination of the witness. We have set out the substance of the defendant's testimony, for the reason that we think that the cross-examination was within the line of the examination in chief. There surely ought to be no question as to the right to interrogate the defendant, as a witness, on the subject of threats made against the deceased, to any one.

V. Afterward, and in rebuttal, the state called two witnesses, who testified that the threat was made in their presence, as set out in the question. This testimony was objected to because the threat, was not recent. It will be remembered that the threat, if any, was made in July, and the homicide occurred on the first day of October, following. This appears to be within the time that the neighborhood feud existed, and, if introduced in chief, there could have been no possible valid objection to it.

VI. It is insisted that the court erred in not instructing the jury that this threat could be considered for the purpose, only, of impeaching the defendant, as a witness. It is true, that no specific instruction was given on this question. It was a matter of dispute on the trial, and no instruction was requested on the subject, by counsel for the defendant. It is true, as urged in behalf of defendant, that it is the duty of the court to instruct the jury upon the material questions of law in the case, whether requested to do so or not. We think, in view of the record, that it must have been understood that this evidence was to be considered as impeaching only. It is said that the case of *Kuhns v. Railway Co.*, 76 Iowa, 67 (40 N. W. Rep. 92), is precisely in point on this question. We do not think this position is well taken. It is held, in that case, that as the record showed that the plaintiff used the evidence as a part of the transaction, when it was only competent for another purpose, the court should have sustained an

objection to it, and excluded it, or instructed the jury for what purpose it could be considered. There is nothing in the record in this case, showing that more was claimed for the evidence now under consideration, than that it was for the purpose of impeachment.

VII. It is contended, with great earnestness, that the verdict is not supported by the evidence. And in the printed argument and in the oral arguments on the submission of the appeal, this question was fully discussed. We have given this feature of the case the most careful and exhaustive consideration. We have read and studied the evidence in connection with a plat of the road and surroundings, where the conflict took place, and our conclusion is, that we ought not to disturb the judgment of the district court. It is to be conceded that there is a decided conflict in the evidence as to whether the defendant was the attacking party. But two juries have concurred in finding that his act in taking the life of Walter Clark, was murder in the second degree. We will not review the evidence, but deem it not improper to say that we doubt if any jury would ever find that the testimony of the defendant, or any other facts in the case, sufficiently account for his presence at the roadside where the encounter occurred, and at the time the deceased and his brother passed along on the way to their home.

VIII. A number of objections are urged against the correctness of the instructions given by the court to the jury. We do not think they require special consideration. A careful examination of them discloses no reversible error.

IX. It is urged that the defendant was prejudiced by improper remarks made by counsel for the state in the closing argument to the jury. The indictment was for murder in the first degree, and the verdict was for murder in the second degree upon both trials. The

main ground of the prejudice claimed, consisted in making reference to the former verdict. It is said by counsel for the state that this was merely in reply to what was claimed by counsel for the defense as to the effect of the first verdict upon the question of lying in wait, and the deliberation and premeditation necessay to convict of murder in the first degree. We think, taking the whole showing, if the court had made any ruling as to what the facts were as to the alleged misconduct, we would be inclined to approve the finding that the remarks complained of did not authorize the granting of a new trial. But, however that may be, we cannot consider the question, because the remarks of counsel complained of do not appear to have been made of record. They cannot be made of record by affidavits, but must be shown by bill of exceptions. *Rayburn v. Railway Co.*, 74 Iowa, 637 (35 N. W. Rep. 606) and (38 N. W. Rep. 520); *State v. Woodward*, 84 Iowa, 172 (50 N. W. Rep. 885); *Ford v. Eeasley*, 88 Iowa, 603 (55 N. W. Rep. 336). The judgment of the district court is AFFIRMED.