STATE OF IOWA, Appellee, v. WILLIAM WALTERS, Appellant.

**CRIMINAL LAW:** Appeal—Weight of Evidence—New Trial. On
1  appeal in a criminal cause, the court manifestly will not say that
.  the verdict of guilty is "*violative of the clear weight of the evidence*" simply because the defendant has the greater number of witnesses, especially when the testimony of such latter witnesses is markedly impeached by an odor of untruthfulness.

**CRIMINAL LAW:** Evidence—Acts of Others in Defendant's Behalf.
2  One on trial for a criminal offense, who seeks to avail himself of what others concertedly did in his behalf, is in no position to deny that such others are his agents, and to deny that he is bound by what they did.

**CRIMINAL LAW:** Appeal—Violation of Rules—Waiver. Principle
3  recognized that a violation of the rules governing assignment of

errors and the presentation of the propositions relied on for reversal may be waived, especially in criminal causes.

CRIMINAL LAW: Appeal—Review—Reception of Evidence—
Harmless Error. Error may not be predicated on the overruling of a single objection to certain evidence, when like evidence, at other stages of the trial, was repeatedly put in without objection.

CRIMINAL LAW: Trial—Reception of Evidence—Argumentative
Form of Question. Record reviewed, and held that the question, "And you take your daughter around to buy beer for her at 9 or 10 o'clock at night, do you?" put to a prosecuting witness in a prosecution for the unlawful sale of liquors, was argumentative in form and properly excluded.

WITNESSES: Cross-Examination—Irrelevant and Collateral Matter.
Whether the prosecuting witness, on a charge of unlawfully selling liquors, was or was not promised his freedom if he would tell where he got the liquors, is held, under the record, to have no material bearing on the question whether the witness was falsely accusing the defendant, and therefore properly excluded on cross-examination.

WITNESSES: Credibility—Conduct of Witness with Reference to
Cause. A witness may very properly be interrogated as to his conception of the gravity of perjury, of his duty to refrain from promoting it, and his duty to help to suppress it, such witness having confessed that he had knowledge of such perjury.

CRIMINAL LAW: Appeal—Review of Instructions Refused. Failure to object to instructions *given* does not preclude review of properly preserved objections to the action of the court in *refusing* instructions requested.

CRIMINAL LAW: Appeal—Instructions—Failure to Object—Effect
on Refusal to Instruct. Error may not be predicated on the refusal of the court to give a requested instruction on the effect of impeaching evidence, when the instructions given by the court, *which are not in any manner objected to*, do present the *central* thought of the instruction refused.

CRIMINAL LAW: Judgment—Excessiveness—Review. Whether the appellate court will grant relief from the alleged excessiveness of a judgment in a criminal cause, may be quite largely controlled by the facts, (a) that the offense in question was not defendant's first offense; (b) that he was guilty, but put the state to the expense of a trial, and (c) that he conspired with others to employ perjury in his defense.

*Appeal from Polk District Court.*—CHARLES A. DUDLEY,
Judge.

TUESDAY, JANUARY 9, 1917.

CONVICTION for maintaining a nuisance by selling intoxicating liquor and keeping same with intent to sell within a building in Polk County, contrary to law. Defendant was ordered to pay a fine of $1,000 and the costs of suit, including an attorney's fee of $50, and appeals.—*Affirmed.*

*Joseph D. Laws,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for appellee.

1. CRIMINAL LAW: appeal: weight of evidence: new trial.     SALINGER, J.—I. We have no quarrel with the law cited for appellant, but doubt its relevancy, here.

*State v. Billings,* 81 Iowa 99, decides: (1) Where the remarks of the trial judge indicate that, in his opinion, the verdict was not supported by the evidence, it was his duty to set the verdict aside on that ground, and having failed to do so, the conviction should for that reason be reversed, independent of the views of the Supreme Court of the sufficiency of the evidence to sustain the verdict; (2) where the undisputed facts are inconsistent with murder, but consistent with suicide, the burden is on the State to overcome the presumption arising from such facts with affirmative proof of guilt, and having failed to do this, a verdict of murder in the second degree was erroneous.

In *State v. Saling,* 177 Iowa 552, we approved and applied cases like *State v. Woolsey,* 30 Iowa 251; *State v. Wise,* 83 Iowa 596, and *State.v. Pilkington,* 92 Iowa 92. They hold, in effect, that we will grant a new trial if a conviction is against a clear weight of the evidence. We agree with *State*

*v. Hilton,* 22 Iowa 241, that, where the evidence is so lacking in affirmative value that it fails to generate a belief of probable guilt, a new trial should be ordered.    These cases are analyzed, limited and applied in *State v. Lyon,* 10 Iowa 340, *State v. Tomlinson,* 11 Iowa 401, *State v. Elliott,* 15 Iowa 72, and *State v. Quinn,* 47 Iowa 368.    Their effect is that, while we will interfere more readily on the weight of the evidence with a conviction than with a judgment on the civil side, there will be no interference on that ground unless the verdict is clearly and manifestly against the evidence—unless the Supreme Court is well satisfied of the insufficiency of the evidence to convince the judgment, reason and conscience of the jurors.    Appellant contends that his conviction is within these cases because the proof of guilt is furnished by one witness who has made affidavit opposed to his testimony, and denial of guilt is made by defendant and two others, neither of the three being impeached.    We do not agree that this situation necessarily makes a verdict of guilty violative of the clear weight of the evidence.    But what is more to the point, we cannot find that this is the state of the evidence. It is true, Reeves alone gives direct testimony that defendant sold him beer, and has made affidavit that the only beer he got of defendant was borrowed.    Also true that defendant, his son-in-law, and another, say no beer was sold, and that none of the three are directly impeached.    But there is so much that supports Reeves and takes credit from the others as that here is no case of arbitrary verdict.

True, the two men who waited while Reeves got the beer do not know what house he went into.    But it is admitted and undisputed that Reeves did go into the house of defendant and tried to get the beer and returned to those in waiting with four bottles of beer.    As said, this is not disputed.    But it is explained, and the explanation is disputed.    It is that, just at the time when Reeves asked for beer, defendant had got some from an unknown and undescribed man in the alley. Defendant, however, kindly advised Reeves that he, too, could

get beer in the alley, which implies that the jury should have believed the "bootlegger" was a fixture in that alley.

One of the two witnesses for defendant is his son-in-law. This son-in-law is the tenant on the farm of the other witness, Casady; and the wife of the son-in-law keeps house for Casady and his father.   These two witnesses called on Reeves on Sunday morning while he was in bed and alone, except for the presence of his housekeeper somewhere in the house.   The interview of that morning seems to have begun with a request that Reeves should help defendant out, to which he responded that he would do what he could, but that he couldn't do anything, and that defendant and he lived neighbors together for quite a while.  He says he didn't say anything very much, gave them no satisfaction at all that morning, except to say that he would like to help defendant out if he could, but did not want to get into it himself. According to the son-in-law and Casady, the first position taken by Reeves was merely that he never bought any beer of defendant.   The son-in-law says he can't remember when Reeves first told them that he borrowed it, but he did at some time say he borrowed it and paid nothing for it.   Casady says that, when Reeves informed them he did borrow the beer, he, Casady, knew this was false.  Knowing all this, these two inquired whether, if they brought a notary that Sunday afternoon, Reeves would make affidavit, and would in that live up to what he had said in the morning; and Reeves responded that he had no objection to the notary's being brought, and said: "Why certainly, I could not say anything else but the truth, and I will say it."   The notary was Laws, the attorney of defendant, and an affidavit was made that Sunday afternoon, in which Reeves said what the others say they knew to be false—that he borrowed the beer.   The son-in-law asked Laws to draw up the affidavit.  It may not be denied that the jury might well be suspicious of testimony of Reeves, after being advised he had made such an affidavit. But it might well be as suspicious of the credibility of those

who procured the affidavit, and testified for defendant. More-
over, Reeves said, and the jury might believe, he was utterly
ignorant—could just sign his name; that the usual formalities
of swearing, such as holding up the right hand and an
acknowledgment that affiant was swearing, were not indulged
in; and that Reeves would more readily make false state-
ments under such conditions than when speaking under the
sanction of an oath which he knew was a formal oath, to which
the pains and penalities of perjury could attach. The very
language of the affidavit—Reeves stated on oath bottles of
beer found on him were borrowed from his friend W. J.
Walters; he paid no money for the same; it was delivered
to him under a promise to return; and that he promised to
pay no money or other valuable consideration for it—indi-
cates that it was the language of a draftsman having some
knowledge of the law, rather than a statement which a man
like Reeves would make voluntarily and spontaneously; and
it is to be noted also that the two witnesses and the lawyer
were there about an hour before the paper arranged for in
the morning was finally executed.

### 1a

Again: Defendant wanted to go and see Mr. Laws, his
attorney on the trial and on this appeal. Defendant's son-
in-law claims he did not know there would be present Reeves
and Daikens and Miller, who were with Reeves on the night
on which it is claimed defendant sold beer, and who drank
the beer obtained by Reeves, no matter how obtained. The
witness Casady did not know "for sure" that Laws would
be present. On reflection, he says that, while he hadn't seen
Laws that evening, before he went up to the office, he had
seen defendant, and knew from him that Laws was going to
the office. Nobody told Casady "to get those fellows to go
to Laws' office," but witness "just asked them to go up there
myself;" thought he would take them to the office and see
what they had to say—but he didn't talk to them after they

got to the office. He asked Reeves to go, but didn't "ask" him what Laws wanted him for. When he got to the office, no one was there; later, Reeves and the two others arrived. Defendant, his son-in-law and Casady came later. Laws was introduced to Reeves, Daikens and Miller. The latter remembers Laws' saying that the boys all must be friends of Walters, because they had all come to meet him and talk to him. Then Laws said he wanted the facts in the case and the truth; heard nothing said about anybody's swearing to anything. The interest here shown by the witnesses for defendant bore on their credibility. The general trend of what occurred on this meeting so convoked leaves the impression it was to be announced the truth was sought for, and to be accomplished that testimony favorable to defendant was to be defined and obtained. In view of the fact that it was first of all recognized that the very presence of the witnesses was proof of a friendly desire "to let defendant out," the repeated announcement that it was to be done without perjury, and that nothing but the truth was to let him out, suffers somewhat from being in the nature of an anti-climax, or from being over-emphasis. All of it impresses us as an attempt at alibi—as self-serving declarations made for future use or protection—an attempt to arrange for perjury, disguised under protested desire to have the truth told. At all events, the jury could well find that it detracted from the weight of the evidence for defendant, and tended to overcome the fact that it preponderates numerically.

## 1b

Bearing both on the weight to be given the testimony of defendant's son-in-law and Casady, and the sincerity of the repeated declaration in the Laws office that perjury was taboo, are these facts: Both say as witnesses that no beer was got of defendant. Yet, one says that, when Reeves said at the office meeting that beer was borrowed of defendant, witness started to correct him, and does not

know whether he did so or not. And after all this, and after saying he was present while Reeves was, he says he doesn't know whether the statement was false, because Reeves may have done the borrowing when the witness was not present. The other witness explains why he made no protest against the false statement that the beer had been borrowed by saying, "What would I want tell him for?" and, finally, that everybody was talking, and he didn't pay much attention to the conversation. Also, that he considered it none of his business that perjury would be committed if it was testified that the beer was borrowed.

## 1c

Nor is this office meeting all. The jury could believe that the son-in-law bribed Reeves with money to make the false affidavit. We do not overlook that the affidavit, the steps to obtain it, and the alleged bribery, are

**2. CRIMINAL LAW: evidence: acts of others in defendant's behalf.** sought to be avoided with the claim that defendant is not bound by them. It is a sufficient answer that he seeks to avail himself of what the others did in these matters, acting in concert for a common purpose in his interest, and is in no position to deny that they are his agents, and he bound by what they did, even though he may not have given them advance authority. We are unable to understand how *State v. Hamilton,* 32 Iowa 572, and *State v. Helm,* 97 Iowa 378, militate against this. The first holds that the declarations of one not a party to the record are admissible for the purpose of impeachment only, and before they can be shown for this purpose, the attention of the witness must have been called to the time, place and circumstances of the supposed contradiction. The other rules that, on a murder trial, where it appeared that deceased and his friends formed one faction in a neighborhood feud, and defendant and his friends formed the other, evidence that, prior to the homicide, there were frequent quarrels and fights between the factions, was admissible,

where it also appeared that defendant was present and took part.

### 1d

Then there is evidence that, after the meeting in which this campaign for the truth was made, Reeves returned to Daikens the money furnished by Daikens with which to buy the beer.

### 1e

It does appear that Reeves named defendant as the seller, after the police had brought pressure to bear. But there is not even a suggestion that Reeves was pressed to name defendant. There was no coercion which accounts for the selection of the seller, if defendant was not the one who sold.

II. There are no propositions under any assignment of errors relied on for reversal. There is nothing but a caption, "Errors Assigned," under which it is said, so far as present purposes are concerned: (1) There was error in ruling upon the admission of testimony; (2) it was error to overrule the motion for new trial. The motion for a new trial asserts that the court erred in permitting the counsel for the State to question Reeves concerning the contents of Exhibit 1 before that document was introduced in evidence; that the court erred in overruling the objections to the questions put by the counsel for the State to Reeves, in that Reeves was permitted, over these objections, to testify to a conversation between him and one Cougle concerning the testimony of said witness, without the defendant's presence and hearing. As a substitute for the propositions required by the rules of this court, it is said in argument that there was error in overruling the defendant's motion for a new trial and in arrest of judgment, "for the reasons before mentioned in this argument. And the court is referred to pages 51 and 52, beginning at line 9 on page 51 and ending at line 14 on page 52." The same

3. CRIMINAL LAW: appeal: violation of rules: waiver.

argument asserts that the trial court labored under the mis-conception that being a son-in-law of defendant would, of itself, establish agency, and that it is a rule of law that one charged with crime cannot be bound by the statements of a third person, unless made in his presence and hearing. This is followed by pointing out various conversations which led to the making of the affidavit. The only authorities cited are *State v. Lyon,* 10 Iowa 340, that evidence which, strictly con-sidered, would be irrelevant, might be admissible if it tends to explain facts pertinent to the issues, and *State v. Helm,* 97 Iowa 378, that, where defendant testified as to quarrels and fights with deceased and his friends before the homicide, but denied making certain threats against defendant brought out by the evidence of the State, it was proper cross-exam-ination to ask him if he had not, in a conversation with a third person, made threats against deceased.

The state of the record fairly justifies us in refusing to give consideration to various alleged errors found printed in the abstract. But the main purpose of the rules on presenta-tion is to save this court needless labor; and we may waive them. We are more inclined to do this in aid of liberty, and will pass upon all these assignments that can be under-stood. Most of them urge in some form that defendant is not bound by what is done in his interest and is adopted by him, unless he sanctioned it in advance or was present when it was done. We have disposed of this contention elsewhere in this opinion.

(a) Speaking to the conference in the Laws office, Reeves was asked by the State, on redirect, whether there was anything to drink there. Defendant objected that this was leading and immaterial. There was no

4. CRIMINAL LAW: appeal: review: reception of evidence: harm-less error.

ruling. The answer was that there was some-thing there to drink, but witness could not exactly say who brought it in. The witness Casady said, without objection, that he didn't know whether

they had anything to drink in the office; that he doesn't believe they had, and doesn't believe he got it. Then he was asked, "Now be sure about it; say yes or no to it, if you can." Objection was made that this was immaterial and not cross-examination, and overruled. The answer was that they had a drink, but he didn't know who produced it. Other witnesses stated without objection that there was something to drink there that night, and that a bottle of whisky was produced, and that one witness thought defendant produced it, but wouldn't swear to it. It is apparent that, if there was any error in overruling the single objection made and ruled on, it was harmless, because the very matter sought to be elicited by the question excepted to was repeatedly put in without objection.

(b) Reeves had stated that his daughter was present when defendant attempted to buy beer of him on a former occasion; whereupon the defense asked, "And you take your daughter around to buy beer for her at nine

**5. CRIMINAL LAW: trial: reception of evidence: argumentative form of question.**

or ten o'clock at night, do you?" The objection that this was argumentative and improper was sustained. We think rightly so, at least as to being argumentative. Nothing prevented a reframing of the question in proper form, and it was not done.

(c) Addressing itself to the police coercion, the defense asked of Reeves, on cross-examination: "And you were told if you would tell where you got the beer that they would turn you loose, were you not?" Objection

**6. WITNESSES: cross-examination: irrelevant and collateral matter.**

by the State that this was incompetent, irrelevant and immaterial and improper was sustained. Thereupon, counsel for defendant explained that what he sought to show was admissible, because part of the *res gestae*. It is manifest that it is not that. Moreover, as has been said, the mere fact that pressure was brought to bear had no material bearing on whether the witness was falsely accusing defendant. There was no induce-

ment for naming the defendant. The case would be different if there had been as much as an intimation that pressure would cease upon condition that defendant be accused.

(d) Reeves said that, on the night on an earlier occasion when he tried to buy beer, he drank no beer in the house of defendant; that he took it away with himself and his daughter; and that neither his daughter nor he drank it. He was then asked: "Who did drink it?" The objection of the State that this was incompetent, irrelevant and immaterial was sustained. The answer was: "The two gentlemen." We are of opinion that the ruling excluded nothing that was material to the issues on trial.

(e) The witness Casady had testified that he heard Reeves say, in Laws' office, that he borrowed the four bottles of beer; that he knew this to be false; and that he said nothing about it then because it was none of his business. The State then asked him: "None of your business if a man commits perjury in a trial?" and the answer was, "It ain't none of my business; that is his own business." No objection had been made up to this point, but after the answer, defendant objected that it was improper cross-examination and argumentative, and the court said the witness might be asked about the matter inquired about, leaving out the word "perjury." The further answer was, "It was not exactly some of my business to get these fellows up there." The point might well be disposed of on the ground that the objection came too late. But it is self-evident that it was proper cross-examination, because it tended directly to weaken the credibility of witness. Surely, it was competent to advise the jury of the conception the witness had concerning the gravity of perjury, and of his duty to refrain from promoting it, and to help suppress it.

7. WITNESSES: credibility: conduct of witness with reference to cause.

(f) The State's counsel said to a witness, "Now, be sure about it; say yes or no to it, if you can." The defense

objected that this was immaterial and not cross-examination, and was, under exception, overruled. This is quite unintelligible, and we are unable to see, from aught that appears, how the ruling could have been in any way prejudicial.

(g) Testimony of a witness is abstracted in narrative form. At one point in it, the court said, under exception: "Don't sit here and evade these questions." Since we have neither question nor answer, we are unable to say that the statement was an abuse of discretion.

(h) It is urged that the closing argument for the State was highly and improperly inflammatory, and made under conditions prevailing that tended to make it extremely prejudicial, and urged as error that the court permitted this. There is nothing in the *record* which as much as indicates or suggests what the closing argument was.

III. No objection seems to have been made to the instructions which the court did give. This failure notwithstanding, as the refusal to instruct was duly excepted to and

8. CRIMINAL LAW: appeal: review of instructions refused.

is now properly presented, appellant may have reviewed the refusal to charge, though he may not urge that the charge given is erroneous. He may complain that, though the instructions given are correct as far as they go, they fail to give the equivalent of the instruction refused—*State v. Collins,* 178 Iowa 73, and, of course, that the ones given oppose the one rejected. The exception to the refusal asserts that it is error to charge except as prayed. The assertion needs to be made but once.

9. CRIMINAL LAW: appeal: instructions: failure to object: effect on refusal to instruct.

The defendant asked and was refused an instruction that one witness for the State had, out of court, made an affidavit and statements inconsistent with his testimony. It proceeded:

"That all such matters go to affect the credibility of the witness, but it is not for the court to say what weight, if any, shall be given to the testimony of the witness so contra-

dicted. But it is for the jury to judge what effect such contradictory evidence is to have on the credibility of such witness and what weight or credence is to be given the testimony so contradicted, and the jury may entirely ignore the evidence of such witness, if in their judgment he is not worthy of belief.''

We will assume that the rejected instruction states the law. The sole question we have, then, is whether the charge given does not, in the absence of exception, sufficiently present the theory of instruction refused. In the sixth instruction, the jury was told that it was for it "to say, under all the evidence offered on the trial, whether or not defendant did" do what is charged. Number 10 is:

"You are the sole judges of the credibility of the witnesses and the weight to be given their testimony. In weighing the testimony of each, you will take into consideration whether corroborated or contradicted by other witnesses or by facts proven, and all matters appearing, fairly tending to show the weight and credit that should be given.''

It is idle to inquire whether, if proper objection had been made, we would hold that this was not the most specific and best method of charging on impeachment. None was made. In its absence, we think it should be held that the charge given does in a manner present the central thought of the instruction rejected: that, if the testimony of a witness is contradicted, it goes to his credibility, and, under certain conditions, may warrant the jury to refuse believing him at all. As said, the manner of saying so may not be above criticism, but such criticism was waived by failure to except.

It is true that two of the three cases cited by the State are not effective. The point to *Lancaster v. State* (Tex.), 35 S. W. 165, at 167, is merely that the following instruction has been approved several times by the Texas court:

"You should reconcile all conflicts in the testimony, if you can; but, if you cannot, you must decide which of the

testimony is entitled to the greater credibility and weight, and, in so determining, you may consider the intelligence, interest, and apparent bias or prejudice of any of the witnesses, as well as their manner of testifying.''

In. *Deal v. State* (Ind.), 39 N. E. 930, at 932, 933, there was an instruction:

''In determining the weight to be given the testimony of the different witnesses, you should take into account the interest or want of interest they have in the case, their manner on the stand, the probability or the improbability of their testimony, with all circumstances before you which can aid you in weighing their testimony.''

The objection urged is that this invades the province of the jury, in that it, in effect, tells them, as a matter of law, that a witness who is interested in the outcome of a suit is entitled to less credence than one who is not. The court holds that this is not well taken, and that the instruction amounts to no more than a statement that it is the duty of the jury, in determining the weight to be given to the testimony of the witnesses, to consider all the evidence bearing on that question—that is, their interest or want of interest in the case, their manner on the witness stand, the probability or improbability of their testimony, with all the circumstances in evidence which may aid them in weighing such testimony. But *Belt v. People,* 97 Ill. 461, at 471, 472, fairly holds that an instruction in substance like the one here given takes away the right to complain that the jury was not properly charged on impeachment. And the citations of appellant do not hold that the refusal to instruct was reversible error. Indeed, we might well say they are irrelevant. *State v. Helvin,* 65 Iowa 289, and *State v. Tweedy,* 11 Iowa 350, decide no more than that, though instructions are not full enough, the complaint is not good on appeal, where no fuller ones were asked. *State v. Brainard,* 25 Iowa 572, and *State v. O'Hagan,* 38 Iowa 504, rule that it may be error to omit a charge on material points clearly made by the testimony,

especially if the offense be high and the cause complicated. *State v. Meshek,* 51 Iowa 308, is: On the trial of an indictment for murder, two witnesses testified to hearing two shots fired, and one to hearing but one. While the first shot might have been justifiable in self-defense, the second, if fired at all, was fired while the deceased was retreating. Held that an instruction limiting the attention of the jury to the testimony of these witnesses, and ignoring important facts tending to corroborate the negative testimony, was erroneous. *State v. Helvin,* supra, holds also that it is not error to refuse giving an instruction asked when the same ground has been fully covered by an instruction given. *State v. Helm,* 97 Iowa 378, declares that where, from the whole record, it appears that evidence of threats by defendant prior to the homicide was admitted wholly to impeach his testimony, it was not reversible error for the court to fail to charge limiting its effect to impeachment. We said, in this connection:

"It is insisted that the court erred in not instructing the jury that this threat could be considered for the purpose only of impeaching the defendant as a witness. It is true that no specific instruction was given on this question. It was a matter of dispute on the trial, and no instruction was requested on the subject by counsel for the defendant. It is true, as urged in behalf of defendant, that it is the duty of the court to instruct the jury upon the material question of law in the case, whether requested to do so or not. We think, in view of the record, that it must have been understood that this evidence was to be considered as impeaching only."

The holding of *State v. Hamilton,* 32 Iowa 572, is that the objection that an instruction fails to present the law fully will not be considered, where it does not appear that all of the instructions are embodied in the record.

IV. The point is made that the sentence is excessive and unusual for a first offense. It is made to appear that,

on a search warrant served in defendant's house, nothing was found except one bottle of beer in the refrigerator. It appears further that defendant has lived in Des Moines about 22 years, and has been a teamster for about 15; that prior to this he was car inspector for a railway; and that he worked for the Des Moines Union for two years, and the Great Western railway about two years. The maximum sentence was imposed. How we should have regarded its imposition had defendant pleaded guilty and made said matters appear, we need not discuss. He pleaded not guilty. There is testimony that this was not his first offense. Further, the jury could well find that he not only put the State to the burden and expense of trying him when he was guilty, but that he produced perjured testimony to sustain his defense, and that the same was obtained by a campaign that amounts to a conspiracy indulged in by those who favored him and who are close to him, and that he knew of and adopted these criminal activities on his behalf. In these circumstances, we should not interfere with the discretion which the trial court exercises in choosing between permitted punishments. See *State v. Helvin*, 65 Iowa 289.

10. CRIMINAL LAW: judgment: excessiveness: review.

The judgment must be and is—*Affirmed.*

GAYNOR, C. J., LADD and EVANS, JJ., concur.